**In re Anonymous No. 83 D.B. 85**

Disciplinary Board Docket No. 83 D.B. 85

To the Honorable. Chief Justice and Justices of the Supreme Court of Pennsylvania:

TUMOLO, *Chairman,* March 12, 1991—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## HISTORY OF PROCEEDINGS

Petitioner, [ ] (formerly known as [ ]), was disbarred by Supreme Court order dated February 24, 1986. Petitioner's disbarment resulted from her February 13, 1986, voluntary resignation from the bar, pursuant to Rule 215, Pa.R.D.E., after her earlier admission that she had misappropriated $32,000 from a family estate which she had also neglected.

On November 6, 1985, a petition for discipline was filed. The petition alleged that misappropriation and neglect of her great-aunt's estate violated the following Disciplinary Rules:

(a) D.R. 1-102(A)(4)—which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation;

(b) D.R. 1-102(A)(6)—which prohibits an attorney from engaging in conduct that adversely reflects on her fitness to practice law; and

(c) D.R. 6-101(A)(3)—which prohibits an attorney from neglecting a legal matter entrusted to her.

Petitioner tendered her resignation shortly thereafter.

On August 27, 1990, petitioner filed a petition for reinstatement, in accordance with §89.272(b), Disciplinary Board Rules.

The matter was referred to Hearing Committee [ ], which was chaired by [ ].

A reinstatement hearing was held on November 5, 1990. On January 24, 1991, the Hearing Committee filed its report, and unanimously recommended that petitioner be reinstated to the Pennsylvania bar.

The matter was adjudicated at the February 5, 1991, meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## FINDINGS OF FACT

(1)  Petitioner was born in 1953 and admitted to the Pennsylvania bar in 1978.  She is a graduate of [  ] University and [  ] Law School.

(2)  From the time of her admission to the bar until her 1986 disbarment, petitioner practiced either alone or in conjunction with her then-husband [A].

(3)  About 1979, petitioner became aware that her husband had a gambling problem when he would bet on sporting events and then ask petitioner for money to cover his gambling losses.

(4)  Between 1979 and 1982, petitioner's husband's gambling problem grew worse.

(5)  In January 1982, petitioner gave birth to a son, [ ], who was the only child of the marriage.

(6)  By 1982, petitioner and her husband were experiencing severe financial difficulties as a result of her husband's gambling debts.  All fees and assets of the professional partnership were being applied toward petitioner's husband's gambling liabilities, and the law firm's bills were not being paid.

(7)  Petitioner and her husband took out a second mortgage on their home, failed to pay personal bills until termination notices were received, and borrowed in excess of $100,000 from friends and family in an attempt to satisfy petitioner's husband's gambling debts.

(8)  Various threats of physical harm to petitioner's husband and his wife and child were made in connection with the gambling debts.

(9)  Petitioner's husband was also involved in extramarital relationships and excessive drinking at this time.

(10)  Because of her commitment to the institution of marriage and her desire to provide her infant son

with an intact family, petitioner did not leave the marriage at this time.

(11) In December 1982, petitioner began to improperly withdraw $32,000 from the estate of her great-aunt, for which petitioner was co-executrix and co-trustee. The misappropriated funds were used to satisfy a portion of petitioner's husband's gambling debts. The beneficiaries of the $300,000 estate were petitioner's mother and her aunt.

(12) Petitioner and her husband separated in September 1984 and were divorced in May 1985.

(13) Petitioner terminated her professional partnership with her husband in February 1985.

(14) Petitioner brought her misconduct to the attention of the Office of Disciplinary Counsel. There were never any complaining parties seeking petitioner's discipline.

(15) Petitioner terminated her practice of law in October 1985, and voluntarily resigned from the bar in February 1986.

(16) Petitioner made full restitution to the estate, including interest, and returned all fees earned as attorney or co-fiduciary.

(17) Petitioner has primary custody of her minor son and is his sole source of financial support.

(18) After petitioner's resignation from the bar, she was employed as a manager for [B] Restaurants, where she was responsible for handling substantial revenues, which she did without incident.

(19) Petitioner sought psychological counseling immediately following her disbarment.

(20) In 1987, petitioner began performing legal research for various [D] County attorneys, and obtained part-time employment with [C] in December 1987.

(21) During her disbarment, petitioner kept abreast of developments in the legal field by reading various law publications, including the *Pennsylvania Lawyer, ABA Journal, PBA Quarterly, [ ] Reporter, [D] County Law Journal,* and *Civil Litigation Section Newsletter.* She also attended the Pennsylvania Bar Institute Basic Practice Course at Bucknell in August 1990.

(22) Petitioner is extensively involved in church activities, having been a Sunday school teacher and superintendent and committee chairperson.

(23) Petitioner is also active in the Boy Scouts of America program.

(24) Petitioner has participated in the Big Brothers/Big Sisters organization since November 1986.

(25) Several witnesses, including six attorneys, a pastor, a former client and two community members attested to petitioner's excellent character at the November 1990 hearing on the petition for reinstatement.

(26) Additionally, 12 attorneys and two citizens wrote letters, many unsolicited, in favor of petitioner's readmission request.

(27) No member of the bar or the public has protested petitioner's request for reinstatement, which has been duly advertised.

## CONCLUSIONS OF LAW

(1) The misconduct for which petitioner was disbarred is not so egregious as to preclude immediate consideration of her petition for reinstatement.

(2) Petitioner has sustained her burden of proving she possesses the moral qualifications, competency and learning in the law required of an attorney licensed to practice law in the Commonwealth of Pennsylvania.

(3) Petitioner's resumption of the practice of law will not compromise the integrity of the bar, nor subvert the interests of the public.

## DISCUSSION

The issue is whether this petitioner's request for re-entry into the Pennsylvania bar should be granted. Answering this question requires a two-part analysis.

First, the board must determine whether the conduct which resulted in petitioner's disbarment was so egregious as to preclude reinstatement. In the event the conduct does not preclude reinstatement, then, a determination is made of whether a sufficient amount of time has passed since the misconduct occurred during which the petitioner has engaged in a qualitative period of rehabilitation. *See Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986).

The preliminary inquiry when a disbarred attorney seeks reinstatement is whether the misconduct which resulted in disbarment is so egregious as to preclude reinstatement. When considering the petitioner's possible readmission to the bar, "a review of the underlying offense is required as an initial step in determining eligibility for reinstatement." *Office of Disciplinary Counsel v. [E],* 4 D.B. 76 at 4. *[E]* stands for the proposition that there are certain acts of misconduct so offensive to the integrity of the bar and subversive to public interest that no passage of time or rehabilitation can cure the miscarriage of justice which would occur if the petitioner was reinstated.

The question in the instant matter is whether petitioner's neglect and misappropriation of $32,000 in her great-aunt's estate funds in an attempt to satisfy her husband's illegal gambling debts and thereby avoid possible physical harm to her husband, her young son

and herself is so offensive as to render her ineligible for possible reinstatement. Although we recognize the grave nature of petitioner's breach of her fiduciary duties, we find that petitioner's aberrational misconduct is not so outrageous as to prevent consideration of her reinstatement to the Pennsylvania bar.

This conclusion is based upon the fact that the Office of Disciplinary Counsel did not object to the unanimous recommendation of Hearing Committee [ ] that the petition for reinstatement be granted, the aberrational nature of the misconduct, the highly unusual circumstances which gave rise to petitioner's actions, and an examination of other Pennsylvania reinstatement cases. We also note that although petitioner's conduct was patently offensive, it is not so repugnant as to forever color her credibility as an officer of the court. *See Office of Disciplinary Counsel v. [F]*, 7 D.&C.4th 260 (1990) (attorney subsequently reinstated after disbarment for delivery of a bribe to a public official, giving false testimony under oath after a grant of immunity, failing to make appropriate disclosure to a federal grand jury and law enforcement officers, and "laundering" checks for a public official); *In re [G]*, 49 D.&C.3d 298 (1988) (attorney restored to the bar after numerous convictions for offering materially untrue statements to the Office of Housing and Urban Development, fraudulent lot sales, and mail fraud); *Office of Disciplinary Counsel v. [H]*, 5 D.&C.4th 557 (1989) (attorney who voluntarily resigned from the bar after unsatisfactorily handling client affairs subsequently reinstated).

The next point of inquiry, having decided that petitioner's misconduct is not so egregious as to thwart possible reinstatement, is whether a sufficient quantitative period of time has elapsed since petitioner's misconduct during which she has engaged in qualitative

rehabilitation. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986); *Office of Disciplinary Counsel v. [H], 5* D.&C.4th 557 (1989). The question is really whether petitioner has been qualitatively rehabilitated from the conduct which led to disbarment.

Prior to the neglect and misappropriation of her great aunt's estate, which led to the instant proceedings, petitioner enjoyed an unblemished disciplinary record and a satisfactory professional reputation. The events which precipitated her misconduct were the extremely stressful, enormous financial devastation which resulted from her husband's compulsive gambling and accompanying fear and depression about the possible consequences of not satisfying these fiscal obligations. Petitioner presented uncontroverted testimony that her wrongful misappropriation of her great-aunt's estate monies was a single desperate action futilely taken in an effort to stave off financial ruin and possible physical harm for her family.

Since her 1982 misconduct, about which petitioner herself alerted the Office of Disciplinary Counsel, petitioner has: divorced her husband; sought psychological counseling; been successfully employed as a restaurant manager responsible for handling large sums of money; performed meaningful work for members of the Pennsylvania bar as a paralegal; made restitution to the estate for the misappropriated funds; kept current on the legal field; engaged in substantial community service activities; and expressed extreme remorse about the actions which led to her disbarment. Petitioner has satisfactorily proved, through her participation in the aforementioned activities and her sincere contrition about her misconduct, that she has undergone a qualitative period of rehabilitation since her 1986 disbarment.

The second phase of analyzing petitioner's request for reinstatement involves consideration of her moral qualifications and learning in the law, as well as any possible detriment her readmission could cause to the bar or the public. *See* Rule 203, Pa.R.D.E. Petitioner must prove, with clear and convincing evidence, that she possesses the moral qualifications and learning in the law expected of a Pennsylvania attorney, and that her reinstatement will not be subversive to the interests of the public nor detrimental to the integrity of the bar. *See* Rule 218(c)(3)(i), Pa.R.D.E.

The [H] and [G] cases are instances in which the petitioner sustained the burden of proving moral qualification to practice law through the presentation of favorable character testimony by highly regarded members of the bar. *Office of Disciplinary Counsel v. [H]*, 5 D.&C.4th 557 (1989); *In re [G]*, 49 D.&C.3d 298 (1986).

Similarly, the instant petitioner has presented a multitude of positive, sometimes unsolicited, testimony to her high moral character. Several members of the [D] County legal community stated that her reinstatement would be an asset to the bar, and various people attested to their willingness to allow petitioner to handle their legal needs if she is restored, and the law firm [C] for whom petitioner has performed legal research during the period of her disbarment, has offered her an associate position upon her reinstatement.

Additionally, petitioner was successfully employed by [B] Restaurants during the period of her disbarment in the capacity of manager, where she handled large cash receipts without incident. This is proof that her misappropriation of funds was indeed an aberration which occurred under extreme circumstances, and not

a permanent bar to her capable management of entrusted funds.

Finally, we note that petitioner's extensive participation in community service activities, including Sunday school teaching, Cub Scouts and Big Brothers and Sisters further attests to her strong moral fiber.

The final hurdle between petitioner and her bid for reinstatement concerns her learning in the law. In addition to her performance of legal research for various attorneys, petitioner has also studied the *Pennsylvania Lawyer, ABA Journal, PBA Quarterly, [C] Reporter, [D] County Law Journal,* and *Civil Litigation Section Newsletter.* She also attended the Pennsylvania Bar Institute Basic Practice Course at Bucknell in August 1990. Participation in these various legal education endeavors proves that petitioner possesses the learning in the law required of a member of the Pennsylvania bar.

Petitioner's high level of learning in the law, her excellent moral character, the aberrational nature of her misconduct, and her participation in a qualitative program of rehabilitation all prove that petitioner's reinstatement to the Pennsylvania bar will not be subversive of the public interest nor detrimental to the integrity of the bar.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that the petition for reinstatement of [Petitioner] to practice law in the Commonwealth of Pennsylvania be granted.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the nec-

essary expenses incurred in the investigation and processing of said petition for reinstatement.

Messrs. Keller, Brown, Hill and Powell did not participate in the adjudication.

## ORDER

And now, August 21, 1991, upon consideration of the report and recommendations of the Disciplinary Board dated March 12, 1991, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.